UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-cv-60547

TOLIFE TECHNOLOGIES PTY LTD and
MOSHE MAOR,

    Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, ToLife Technologies Pty Ltd ("ToLife") and Moshe Maor ("Maor") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants"):

### INTRODUCTION

1. This action has been filed by Plaintiffs to combat online infringers who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' registered V-COMB Trademark, which is covered by U.S. Trademark Registration No. 5,993,261 (the "V-COMB Trademark"). The registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the V-COMB Trademark is attached as **Exhibit 1**.

2. This is also an action for patent infringement to combat e-commerce store operators

who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiffs' patent, U.S. Patent No. D858,877 S (the "V-COMB Patent"). The V-COMB Patent is valid, subsisting, and in full force and effect. Maor is the owner and lawful assignee of all rights, title, and interest in and to the V-COMB Patent, which was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the V-COMB Patent is attached as **Exhibit 2**.

3. Defendants are improperly advertising, marketing, and/or selling unauthorized and noncompliant products by reference to marks identical or substantially identical to the V-COMB Trademark and/or that embody the design depicted in the V-COMB Patent (the "Counterfeit Products").

4. The Defendants have created numerous fully interactive commercial Internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A (collectively, the "Defendants").

5. The Defendants design the online marketplace accounts to appear to be selling Plaintiffs' genuine V-COMB Products (the "V-COMB Products"), while selling inferior imitations of such products.

6. The Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are

forced to file this action to combat Defendants' infringement of the V-COMB Trademark and V-COMB Patent, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8. As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their exclusivity of their intellectual property rights, as well as by and through consumer confusion, dilution, and tarnishment of their valuable V-COMB Trademark, and, therefore, seek injunctive and monetary relief.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship and/or sold and shipped Counterfeit Products into this Judicial District.

**SUBJECT MATTER JURISDICTION**

11. This Court has original subject matter jurisdiction over the trademark infringement claim in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

**PERSONAL JURISDICTION AND VENUE**

12. Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business

transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and counterfeit actions caused injury to Plaintiffs in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District.  For example:

  a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, through accounts with online marketplace platforms such as Amazon and Walmart (collectively, the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the United States, including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra)*, and uses to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

  b. Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

4

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because Defendants have committed acts of trademark and/or patent infringement in this Judicial District and do substantial business in the Judicial District.

## THE PLAINTIFFS

14. Plaintiff ToLife Technologies Pty Ltd ("ToLife") is a corporation organized and existing under the laws of Australia with its principal place of business in Welshpool, West Australia. ToLife is the registered owner of the V-COMB Trademark (referred to above, copy of federal registration attached as Exhibit 1).

15. Plaintiff Moshe Maor is the Managing Director for ToLife. Mr. Maor is the owner and lawful assignee of all rights, title, and interest in and to the V-COMB Patent (referred to above, copy attached as Exhibit 2).

16. ToLife is the leading supplier and manufacturer of the V-COMB Products, which have been recognized by Good Design Australia, an international design promotion organization. One of ToLife's V-COMB Products was awarded the 2020 Good Design Award for Medical & Scientific Product Design as well as a recipient of the 2015 Good Design Selection Award, Australia's oldest and most prestigious award for design and innovation. Further, Australia by Design: Innovations, a television program showcasing Australia's best and most exciting product innovations, selected ToLife's V-COMB Products as a finalist in 2018. In short, ToLife has earned an international reputation for its development of mother care, first aid products, and innovative head lice treatments including its V-COMB Products.

## THE V-COMB PRODUCTS

17. ToLife is the official source of V-COMB Products in the United States, using Plaintiffs' patented lice removal technology:






*Exemplary Images of Plaintiffs' Products Using Trademarked* V-COMB *Products*

18. Since at least 2014, the V-COMB Trademark is and has been the subject of substantial and continuous marketing and promotion by ToLife. ToLife has and continues to widely market and promote the V-COMB Trademark in the industry and to consumers. ToLife's promotional efforts include—by way of example but not limitation—through substantial marketing and advertising on social media, Google Ads, Amazon Ads, online advertisements, and

trade shows.

19.     The V-COMB Trademark (attached as Exhibit 1) is distinctive and identifies the merchandise as goods from ToLife.  The registration for the V-COMB Trademark constitutes *prima facie* evidence of its validity and of ToLife's exclusive right to use that Trademark pursuant to 15 U.S.C. § 1057(b).

20.     The V-COMB Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and has been continuously used and never abandoned.

21.     ToLife has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the V-COMB Trademark.  As a result, products bearing the V-COMB Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

22.     The V-COMB Products in many instances embody at least a portion of the design depicted in the V-COMB Patent.

## THE DEFENDANTS

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

24.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the V-COMB Products has resulted in significant infringement and counterfeiting.

26.     Plaintiffs have identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon and Walmart, including the

Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit V-COMB Products to consumers in this Judicial District and throughout the United States.

27.     Defendants have persisted in creating such online marketplaces and Internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the United States government in fiscal year 2021 was over $3.3 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

28.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine V-COMB Products.

29.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

31.     Plaintiffs have not licensed or authorized Defendants to use the V-COMB Trademark or V-COMB Patent, and none of the Defendants are authorized retailers of genuine V-

COMB Products.

32. On personal knowledge and belief, Defendants deceive unknowing consumers by using the V-COMB Trademark and/or V-COMB Patent without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Counterfeit Products themselves.

33. On personal knowledge and belief, Defendants also deceive unknowing consumers by using the V-COMB Trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for V-COMB Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine V-COMB Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell counterfeit V-COMB Products into this District.

34. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

35. For example, it is common practice for infringers to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

36. And many Defendant Internet Stores use privacy services that conceal the owners'

identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

37. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

38. In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

41. Counterfeiters also often move website hosting to rogue servers located outside the

---

[1] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

42. Infringers also typically ship products in small quantities via international mail to minimize detection by United States Customs and Border Protection.  A 2012 United States Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

43. Further, infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

44. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the V-COMB Trademark and V-COMB Patent in connection with the advertisement, distribution, offering for sale, sale, and import of Counterfeit Products into the United States and Florida over the Internet.

46. Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District), and, on information and belief, each Defendant has offered to

---

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

sell Counterfeit Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

47. Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1–46 of this Complaint.

48. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered V-COMB Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The V-COMB Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiffs' products provided under the V-COMB Trademark.

49. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the V-COMB Trademark without Plaintiffs' permission.

50. Plaintiffs is the registered owner of the V-COMB Trademark and official source of V-COMB Products. The United States Registration for the V-COMB Trademark (Exhibit 1) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the V-COMB Trademark and are willfully infringing and intentionally using counterfeits of the V-COMB Trademark. Defendants' willful, intentional, and unauthorized use of the V-COMB Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.



*Exemplary Counterfeit Product Sold on Defendant Internet Store Infringing on Plaintiffs' Registered Trademark Reg. No. 5,993,261[3]*

51. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

52. The injuries and damages sustained by Plaintiffs have been directly and

---

[3] See Exhibit 1 to Complaint.

13

proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit V-COMB Products.

53. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known V-COMB Trademark.

## SECOND CAUSE OF ACTION
## DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)

54. Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1–46 of this Complaint.

55. Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly the V-COMB Patent.

56. For example, below is a comparison of figures from Plaintiffs' V-COMB Patent and images of one of Defendants' Counterfeit Products sold on a Defendant Internet Store.



*Figure from Plaintiffs' Registered Patent No. D858,877 S*

14



*Exemplary Counterfeit Product Sold on Defendant Internet Store*

57. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

58. Defendants have infringed the V-COMB Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

59. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

60. Plaintiffs are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the V-COMB Products or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine V-COMB Product or is not authorized by Plaintiffs to be sold in connection with the V-COMB Trademark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine V-COMB Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the V-COMB Trademark;

    c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit V-COMB Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the V-COMB Trademark and damaging Plaintiffs' goodwill;

    e. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear Plaintiffs' Trademark, including the V-COMB Trademark or any reproductions, counterfeit copies, or colorable imitations thereof;

    f. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name

or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit V-COMB Products; and

   g. operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the V-COMB Trademark or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine V-COMB Product or not authorized by Plaintiffs to be sold in connection with the V-Comb Products.

  2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, embodiment, copy, or colorable imitation of the designs claimed in the V-COMB Patent;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine V-COMB Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the V-COMB Patent;

   c. further infringing the V-COMB Patent and damaging Plaintiffs' goodwill;

   d. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the V-COMB Patent;

   e. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory

not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe the V-COMB Patent; and

   f. operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the V-COMB Patent.

 3. Entry of an Order that Amazon and Walmart, and any other online marketplace account provider:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

   c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

 4. That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the V-COMB Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

 5. That Plaintiffs be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the V-COMB Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

6. That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of Plaintiffs' V-COMB Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

7. In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the V-COMB Trademark; and that Plaintiffs be awarded all profits realized by Defendants from Defendants' infringement of Plaintiffs' V-COMB Patent, pursuant to 35 U.S.C. § 289;

8. That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

9. Award any and all other relief that this Court deems just and proper.

Dated: March 21, 2025

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: /s/ Leigh Salomon
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8450
Email: lsalomon@bsfllp.com

*Attorney for Plaintiffs ToLife Technologies Pty Ltd and Moshe Maor*