UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-60547-CIV-SINGHAL

TOLIFE TECHNOLOGIES PTY LTD
and MOSHE MAOR,

    Plaintiffs,

v.

THE INDIVIDUAL, CORPORATION, LIMITED
LIABILITY COMPANY, PARTNERSHIP,
AND/OR UNINCORPORATED ASSOCIATION
IDENTIFIED ON SCHEDULE A,

    Defendant.
_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** comes before the Court upon the Plaintiffs', ToLife Technologies Pty Ltd ("ToLife") and Moshe Maor ("Maor") (collectively "Plaintiffs"), Motion for Entry of Final Default Judgment ("Motion") dated July 2, 2025 (DE [30]).

Plaintiffs filed their Request for Entry of Clerk's Default on May 30, 2025, against the Defaulting Defendant in this matter (DE [27]).  A Clerk's Default was entered against said Defendant on June 2, 2025 (DE [28]), as Defendant failed to appear, answer, or otherwise respond to the Amended Complaint, despite having been served.  On July 2, 2025, pursuant to the methods of service authorized in the Court's Order dated April 8, 2025 (DE [13]), and in compliance with the Court's Order on Default Final Judgment Procedure ("Order") (DE [29]), Plaintiffs' Motion for Entry of Final Default Judgment was served on the Defaulting Defendant in this matter, via email to the email address provided by the Third Party Marketplace Platform.  Plaintiffs further effected service of process on

the Defaulting Defendant via publication by posting a true and accurate copy of the Motion for Entry of Final Default Judgment on Plaintiffs' Notice Website http://tolifetechnologies-cases.com/case-25-cv-60547.html.  Plaintiffs now seek entry of default judgment against the Defaulting Defendant identified in the attached Schedule A ("Defaulting Defendant").  The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised.  For the following reasons, Plaintiffs' Motion is **GRANTED**.

I.      INTRODUCTION

Plaintiffs sued Defendant for trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114 and design patent infringement pursuant to 35 U.S.C. §§ *et seq*.  Plaintiff ToLife is the owner and lawful assignee of all rights, title, and interest in and to the trademark covered by U.S. Trademark Registration No. 5,993,261 (the "V-COMB Trademark"), and Plaintiff Maor owns all exclusive rights to the ToLife Patent covered by U.S. Patent No. D858,877 S (the "V-COMB Patent") (collectively, the "V-COMB Registrations").  The Amended Complaint alleges that Defendant is improperly advertising, marketing, and/or selling unauthorized and noncompliant products by reference to marks identical or substantially identical to the V-COMB Trademark and that embody the design(s) depicted in the V-COMB Patent (the "Counterfeit Products") into the Southern District of Florida, by operating the Defendant's Internet-based e-commerce store operating under the Seller ID identified on the Schedule "A" attached to this Order (the "Seller ID").

Plaintiffs further assert that Defaulting Defendant's unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defaulting Defendant's wrongful conduct has already caused Plaintiffs to suffer irreparable harm resulting from

the loss of their lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the Counterfeit Products as well as the loss of sales stemming from the infringing acts.

In their Motion, Plaintiffs seek the entry of default final judgment against the Defaulting Defendant for trademark counterfeiting and infringement and design patent infringement. Plaintiffs further request that the Court (1) enjoin the Defaulting Defendant's unlawful use of Plaintiffs' trademark and patent; (2) award Plaintiffs damages; and (3) instruct any third-party financial institutions in possession of any funds restrained or held on behalf of the Defaulting Defendant to transfer these funds to Plaintiffs in partial satisfaction of the award of damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DIRECTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default …"). Upon a review of Plaintiffs' submissions, there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

II.     BACKGROUND[1]

Plaintiffs are the owners and lawful assignees of all right, title, and interest in and to the V-COMB Registrations, which were duly and legally issued by the United States Patent and Trademark Office. *See* (Exs.1 and 2 to Amended Complaint (DE [6-1, 6-2])). V-COMB Products, which bear and/or embody the V-COMB Trademark and/or the V-COMB Patent, are known for their innovative design and superior quality. As a result, the V-COMB Products are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs. *See* (Decl. of Moshe Maor in Support of Pls.' *Ex Parte* Mot. for Entry of Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery (DE [11-1]), ¶ 7) ("Maor Decl.").

The Defaulting Defendant, through its Internet based e-commerce store operating under the Seller ID identified on the Schedule "A" to this Order, has advertised, promoted, offered for sale, sold, and/or imported products that appear to be genuine V-COMB Products, but which are actually inferior and unauthorized imitations of the V-COMB Products. *See* (Maor Decl. (DE [11-1]) ¶¶ 8–15).

Plaintiffs have submitted sufficient evidence showing Defaulting Defendant has infringed, at least, one or more of the claims in the V-COMB Trademark and Patent. *See* (Maor Decl. (DE [11-1]) ¶¶ 8–15); *see also* (Ex. 1 to Decl. of Leigh Salomon in Support of Plaintiffs' Motion for Entry of Final Default Judgment ("Salomon Decl.") (DE [30-1])). The Defaulting Defendant is not now, nor has it ever been, authorized or licensed to use the V-COMB Trademark or the V-COMB Patent. *See* (Maor Decl. (DE [11-1]) ¶ 17).

---

[1] The factual background is taken from Plaintiffs' Amended Complaint (DE [6]), Plaintiffs' Motion for Entry of Final Default Judgment (DE [30]), and supporting evidentiary submissions.

As part of their ongoing investigation regarding the sale of Counterfeit Products, Plaintiffs investigated access the Defaulting Defendant's Internet-based e-commerce store operating under the Seller ID. Plaintiffs attempted to initiate orders from the Seller ID for the purchase of products, all infringing, or suspected of infringing, the V-COMB Trademark and V-COMB Patent, and requested each product to be shipped to an address in the Southern District of Florida. *See* (Maor Decl. (DE [11-1]) ¶¶ 13-14). Accordingly, Defendant's Counterfeit Products are being promoted, advertised, offered for sale, sold, and/or imported by Defendant within this district and throughout the United States. *See Id*. at ¶¶ 12–15). A representative for Plaintiffs personally analyzed the infringing items wherein orders were attempted via each of the Seller ID by reviewing the e-commerce store operating under the Seller ID, or the detailed webpage captures and images of the items bearing and/or embodying the V-COMB Trademark and Patent, and concluded the products were non-genuine, unauthorized V-COMB Products. *See id.*

III.   DISCUSSION

   A.   *Jurisdiction Over Plaintiffs' Claims*

This Court has original subject matter jurisdiction over the trademark infringement claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq*., 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331. Personal jurisdiction exists over Defendant in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)-(2) and 48.193(1)(a)(6). Defendant regularly conducts, transacts, and/or solicits business in Florida and in this Judicial District, and/or

derives substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avails themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice, and/or Defendant's illegal counterfeiting and infringing actions caused injury to Plaintiffs in Florida and in this Judicial District such that Defendant should reasonably expect such actions to have consequences in Florida and this judicial District.  *See* (Am. Compl. (DE [6]) ¶¶ 10–12).

    B.    *Liability*

        1.    Trademark Counterfeiting and Infringement Under the Lanham Act (15 U.S.C. § 1114)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defaulting Defendant adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote and citations omitted).

The well-pled factual allegations of Plaintiffs' Amended Complaint properly allege the elements for each of the claims described above.  *See* (DE [6]).  Moreover, the factual allegations in Plaintiffs' Amended Complaint have been substantiated by sworn declarations and other evidence and establish Defendant's liability under each of the

6

claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

        2.        Design Patent Infringement Pursuant to 35 U.S.C. § 289

Plaintiffs have established a substantial likelihood of success on the merits for their design patent infringement claim. To prevail on their patent infringement claim, Plaintiffs must demonstrate that the accused product infringes a patented design. Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The criterion is deception of the ordinary observer, such that one design would be confused with the other. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F. 3d 665, 679 (Fed. Cir. 2008). Under this test, the central inquiry is whether an "ordinary observer," who is familiar with the prior art, would find the overall appearance of the accused product to be "substantially the same" as the overall appearance of the patented design. *Id*. at 678; *see also Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F .3d 1365, 1372 (Fed. Cir. 2006); *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014) (citing *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) ("If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives two designs, the resemblance between the two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."). An infringing product need not be an exact copy of the patented design, and Defendant cannot escape infringement by introducing minor variations into an otherwise copycat product. *Egyptian Goddess*, 543 F. 3d at 670.

Plaintiff Maor is the inventor and owner of the V-COMB Patent, and the Defaulting

Defendant has without authorization used and offered for sale Plaintiffs' V-COMB Patent. The well-pled factual allegations of Plaintiffs' Amended Complaint, including the specific allegations identified in the previous paragraphs, properly allege the elements for design patent infringement. Moreover, the factual allegations in Plaintiffs' Amended Complaint, substantiated by the evidence submitted, conclusively establish Defaulting Defendant's liability for design patent infringement asserted in the Amended Complaint.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defaulting Defendant's failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1222-23 (S.D. Fla. 2004).

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the public's interest would not be harmed by the issuance of an injunction.  *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Plaintiffs have carried their burden on each of the four factors.

First, Plaintiffs are irreparably harmed.  As alleged and supported by the declarations previously submitted, Defaulting Defendant's acts of infringement have eroded Plaintiffs' market for the V-COMB line of products and impacted Plaintiff ToLife's goodwill.  *See* (Maor Decl. (DE [11-1]) ¶¶ 26–30).  Indeed, the Defaulting Defendant's Counterfeit Products have weakened Plaintiff ToLife's credibility and reputation, resulting in a loss of unquantifiable future sales.  *Id*. ¶ 27.  Moreover, the Counterfeit Products are in direct competition with V-COMB Products.  As a result, Plaintiffs' market position is being irreparably damaged by Defaulting Defendant's continued infringement.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude.").

The second factor favors a permanent injunction as well.  Because Defaulting Defendant has failed to appear, Plaintiffs do not have the ability to discover the full extent of monetary damages they could recover from Defaulting Defendant to compensate Plaintiffs for Defaulting Defendant's infringement, thus, there is no adequate remedy at law. *Enpat, Inc. v. Budnic*, 2011 WL 1196420, at *4 (M.D. Fla. Mar. 29, 2011) (defendant's refusal to appear in the case "reinforces the inadequacy of a remedy at law and the irreparability of the harm absent an injunction").  Additionally, Plaintiffs have no adequate

9

remedy at law so long as Defaulting Defendant continues to use the V-COMB Trademark and Patent in connection with the operation of the e-commerce store under the Seller ID because Plaintiffs will have no control of the quality of the goods that could be associated with V-COMB Products. An award of money damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defaulting Defendant's infringing actions are allowed to continue.

The third factor—the balance of harm—also weighs in Plaintiffs' favor and warrants the equitable remedy of a permanent injunction. Plaintiffs have a significant interest in enforcing their trademark and patent rights and in fact spend significant resources protecting and enforcing their intellectual property. (Maor Decl., (DE [11-1]) ¶¶ 8, 11, 25). Enjoining Defaulting Defendant is critical to prevent hardship to Plaintiffs from loss of sales and/or injury to Plaintiffs' reputation and goodwill. By contrast, Defaulting Defendant faces no hardship if it is prohibited from the infringement of Plaintiffs' trademark and/or patent, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defaulting Defendant to prevent consumers from being misled by Defaulting Defendant's counterfeit products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defaulting Defendant's infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724

(1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defaulting Defendant has created an Internet-based infringement scheme in which it is profiting from the deliberate misappropriation of Plaintiffs' rights. Unless the listings and images are permanently removed, and the infringing goods destroyed, Defaulting Defendant will be free to continue infringing Plaintiffs' intellectual property with impunity and will continue to defraud the public with its illegal activities.

### D.   *Damages for Trademark Infringement and Counterfeiting*

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defaulting Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a Plaintiffs' inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, 2014 U.S. Dist. LEXIS 56475, at **22-23 (S.D. Fla. Apr. 23, 2014) (Rosenbaum, J.) (*citing Ford Motor Co. v.*

*Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure") (citations omitted). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regard to damages pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, clearly establish that Defaulting Defendant intentionally copied the V-COMB Trademark for the purpose of deriving the benefit of Plaintiffs' world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defaulting Defendant does not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that Defaulting Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks that were in fact counterfeits of the V-COMB Trademark. *See* (DE [6]). Based on the above considerations, Plaintiffs suggest the Court award statutory damages of $200,000.00 against the Defaulting Defendant who has infringed on Plaintiffs' trademark. The award should be sufficient to deter Defaulting Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff' trademark, compensate Plaintiffs, and punish Defaulting Defendant, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.  *Damages for Design Patent Infringement*

Plaintiffs' Amended Complaint sets forth a cause of action for design patent infringement pursuant to the Patent Act, 35 U.S.C. § 271, 35 U.S.C. § 289, and 35 U.S.C. § 284. Plaintiffs provided as an exhibit a table calculating damages for Defaulting Defendant's infringement of Plaintiffs' V-COMB Patent. *See* (DE [30-3]). This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI*

*Corp*., 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (Moore, J.).  Although the Court is permitted to conduct a hearing on a default judgment regarding damages pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages.  *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)).  Here, there is no hearing necessary, as Plaintiffs' affidavit provides sufficient evidence on the record to support Plaintiffs' request for damages.

**Statutory Damages.**  As an additional remedy for design patent infringement, the Patent Act imposes liability on infringers of design patents "to the extent of his total profit, but not less than $250."  35 U.S.C. § 289.  To the extent that the Defaulting Defendant's known total profits were less than $250 in connection with the sale of products that infringe on the V-COMB Patent, Plaintiffs seek $250 for the infringement of the V-COMB Patent.

**Lost Profits.**  Under 35 U.S.C. § 284, a court may "award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  These damages may be increased "up to three times the amount found or assessed."  *Id.*  In determining damages for patent infringement, "the focus is on compensating the patentee or the plaintiff for this injury."  *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010).  "[T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement."  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

14

Pursuant to 35 U.S.C. § 284, Plaintiffs seek to recover an award of lost profits.

Determining an award under Section 289 involves two steps: "First, [courts] identify the 'article of manufacture' to which the infringed design has been applied. Second, [courts] calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple, Inc.*, 137 S. Ct. 429, 434 (2016).  The plaintiff has the initial burden to show the article of manufacture and the defendant's total profit on that article. *Evriholder Prods. LLC v. Simply LBS Ltd. Co.*, 2020 WL 7060336, at *9 (S.D.N.Y. Apr. 21, 2020) ("[A]fter a plaintiff in a patent action submits admissible evidence of an infringer's gross profit … it is the infringer's burden to submit admissible evidence to establish that other expenses and costs should be deducted from that profit.") (citing *Nordock, Inc.v. Sys., Inc.*, 2017 WL 5633114, at *3 (E.D. Wisc. Nov. 21, 2017) (collecting cases)).  The defendant then has the burden to produce evidence as to any deductions from the total profit identified by plaintiff (or to show the article of manufacture, if it believes it to be different). *Evriholder*, 2020 WL 706036, at *9.

When calculating an infringer's profits, courts have held in similar contexts that any uncertainty is to be resolved against the infringer.  *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 US. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him.  If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark"); *see also Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999) (citing *Lous Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir. 1985) (holding that where defendants failed to meet their burden regarding profit calculation, a court could adopt plaintiff's proposed calculation)).

In cases where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount. *See, e.g.*, *Chloe v. Zarafshan*, 2009 WL 2956827 at *5 (S.D.N.Y. Sept. 15, 2009) (entering profits award for the entire revenue amount even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products (as opposed to other products not at issue in this case) or as to the costs incurred in acquiring and selling these products."); *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (calculating lost profits based on gross figures where defendant offered no evidence of cost of goods sold) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it.")); *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (placing burden on defendant to show that certain portions of its revenues were not obtained through infringement of plaintiff's marks).

Indeed, under normal circumstances, it is the infringer who bears the burden of "offering a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items in issue." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004), *aff'd*, 153 Fed. Appx. 703 (Fed. Cir. 2005) (citation omitted). "But if the infringer has failed to produce any evidence … the Court must determine the costs to be subtracted from revenue based on the evidence it has to determined profits." *Deckers Outdoor Corp. v. ShoeScandal.com, LLC*, 2013 WL

16

6185203, at *2 (C.D. Cal. Nov. 25, 2013) (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998)).

Here, the V-COMB Patent claims an ornamental design for a lice comb. In the case of a design for a single-component product, such as the V-COMB Patent, the "product is the 'article of manufacture' to which the design has been applied." *Samsung Elecs. Co. v. Apple, Inc.*, 137 S. Ct. at 367. Accordingly, the relevant article of manufacture is each of the Counterfeit Products sold by Defaulting Defendant.

Since Defaulting Defendant has chosen not to participate in these proceedings, Plaintiffs have limited available information, received from the Third Party Providers, regarding Defaulting Defendant's profits from the sale of Counterfeit Products. Defaulting Defendant has failed to appear in this matter and has not produced any documents or information (1) characterizing each of the transactions in its financial accounts, (2) other accepted payment methods; or (3) other Internet stores that it may be operating. As a result, Defaulting Defendant has not met its burden to apportion gross receipts between infringing and not-infringing product sales, or to show any deductions. Since the Defaulting Defendant has not met its burden of apportioning gross sales or showing any deductions, and since the marketplace platforms did not provide any information indicating lost profits, the Court awards statutory damages of $250.00 for design patent infringement pursuant to 35 U.S.C. § 289. A breakdown of Plaintiffs' requested profit award with respect to design patent infringement under 35 U.S.C. § 284 is provided in the chart in (Ex. 2 to the Salomon Decl. (DE [30-3]) ¶ 2).

IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion (DE [30]) is **GRANTED** against the Defaulting Defendant listed in the attached Schedule "A." Final Default Judgment will be entered by separate order. The Clerk of the Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 28th day of November 2025.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

cc: counsel of record

## **SCHEDULE A**

| DOE No. | Defendant Seller | Defendant Seller URL |
|---|---|---|
| 1 | PAATM SHIVA | https://www.amazon.com/sp?seller=A2444FN4WJOFA1 |